John J. SILIQUINI, Jr., Appellee

v.

Jennifer L. KEGEL–SILIQUINI, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 16, 2001.

Filed Nov. 9, 2001.

Sandra G.E. Gray, Lancaster, for appellant.

Anthony J. Baratta, Huntingdon Valley, for appellee.

Before: CAVANAUGH, MUSMANNO, and OLSZEWSKI, JJ.

OLSZEWSKI, J.

¶ 1 Jennifer L. Kegel–Siliquini appeals from an order entered March 8, 2001. We reverse.

¶ 2 In this custody action, the parties requested that the trial court decide a narrow list of issues for completion of a comprehensive custody order. Appellant's Brief at 13. On February 21, 2001, the parties participated in a hearing to present testimony. Appellant's Brief at 15. The parties intended to allow their agreement and the trial court's rulings from the hearing to become the custody order in this case. *See* Agreement at 6.

¶ 3 The principal issue between the parties was whether their four-year-old daughter should be permitted to be a passenger in small aircraft, piloted by appellee ("father"). N.T., 2/21/01, at 4. These flights would include, but would not be limited to, bringing the child to some weekend custody exchanges. *Id.* at 5–6. Usually, exchange of the child takes place Friday and Sunday evenings. N.T., 9/20/99, at 6. On Fridays, father picks up the child at the Pottstown exit of the Pennsylvania Turnpike. *Id.* Father returns the child to the Morgantown exit on Sunday evenings. *Id.* at 7.

¶ 4 Following the hearing, Judge Kenderdine entered a Supplemental Custody Order, permitting father to transport the child by private aircraft, as long as appellant ("mother") received adequate notice. Order, 3/8/00.

¶ 5 This appeal followed. Mother raises five issues, each related to the airplane transport of the child:

1. Whether the lower court erred when it failed to include father's offer and intention to have a responsible adult fly with the child until the child is of school age?

2. Whether the lower court abused its discretion by forcing mother to participate in an activity that she firmly be-

lieves to be inherently dangerous to the parties' daughter?

3. Whether the lower court abused its discretion in that its order regarding father's flights requires mother to arrange her weekend schedule around father's choice?

4. Whether the lower court erred in that it did not require father to utilize any type of protective safety features that would be legally required if the child were transported in an automobile?

5. Whether the lower court erred in that it failed to give adequate consideration to mother's testimony regarding father's carelessness and irresponsible conduct with regard to the child?

Appellant's Brief at 16.

On appeal, our scope of review [in custody matters] is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Garr v. Peters,* 773 A.2d 183, 187 (Pa.Super.2001).

■ ¶ 6 Great deference should be given to the hearing judge, who is in a better position to assess the circumstances. *Bury v. Bury,* 312 Pa.Super. 393, 458 A.2d 1017, 1019 (1983). We, however, should not accept a finding that is not supported, or is contradicted, by the record. *Id.* We review the evidence and render an independent judgment which will assure that the Commonwealth's justifiable concern for the health and safety of its children is met. *Robert H.H. v. May L.H.,* 293 Pa.Super. 431, 439 A.2d 187, 188–89 (1981)

■ ¶ 7 Initially, we note that the trial court fulfilled its responsibility to provide a complete record. The judge also wrote a thorough and well-considered opinion. We have emphasized that the hearing court must provide us with a complete record and a comprehensive opinion, containing a thorough analysis of the record and specific reasons for the court's ultimate decision. *In re Arnold,* 286 Pa.Super. 171, 428 A.2d 627, 628 (1981).

■ ¶ 8 It is well settled that the sole issue to be decided in a custody proceeding is the best interest and welfare of the child. *Wenger v. Wenger,* 267 Pa.Super. 134, 406 A.2d 555, 556 (1979). This is determined on a case by case basis, considering all factors which legitimately impact upon the child's physical, intellectual, moral and spiritual well-being. *Zummo v. Zummo,* 394 Pa.Super. 30, 574 A.2d 1130, 1142 (1990).

■ ¶ 9 In short, mother objects to father being permitted to transport the child by airplane during his period of custody. Mother is concerned for the physical safety of the child. We agree that there is a substantial issue regarding safety. We believe that the trial court failed to consider all factors impacting the child's physical well being, and therefore, we reverse.

¶ 10 Mother focuses her concern on the safety of flying in a rented plane. N.T., 2/21/01, at 26. Mother fears father may not be familiar with the plane he is flying. *Id.* More than anything, mother objects to the airplane being the means of the exchange. *Id.* at 28. The time periods for these exchanges are rigid, and she doesn't

want father to rush, perhaps being careless. *Id.*

¶ 11 Father is licensed to fly single engine land aircraft. *Id.* at 50. Additionally, he has obtained an instrument rating. *Id.* at 51. Yet father has only flown 250 hours since 1987, including many flights with a flight instructor. *Id.* at 53, 77. According to FAA regulations, a pilot needs to make three landings and take-offs to be "current", allowing him to carry passengers. *Id.* at 66. Father is not current. To be exact, father has not flown since July 2000. *Id.* at 66. Further, father has not flown the proposed route in at least a year. *Id.* at 78.

¶ 12 We have grave concerns regarding the child's safety. First, father does not own the planes he proposes to fly. He plans to rent them from Northeast Philadelphia Airport. *Id.* at 54. Although father is responsible for a pre-flight check, he is not responsible for maintenance and upkeep of these planes. He is not intimately familiar with these planes, as he does not own them.

¶ 13 Approximately six different planes, four different models among them, are available at this airport. *Id.* at 69. He cannot know which plane he will be flying before arriving at the airport. *Id.* at 84. He has no choice in the matter. *Id.* He cannot request a certain aircraft. No possibility exists for father to fly the same plane in order to become comfortable with it. This lack of familiarity with the peculiar nature of each aircraft, not to mention each model, creates a question of the child's safety.

¶ 14 Father has been a licensed pilot since 1987. Although father may be an able pilot, we must consider the safety of a four-year-old child. He has only logged 250 hours in that 14-year period. Much of this time included flight instruction. Father has not flown since July 2000 and by FAA requirements, he cannot carry passengers at this time. We cannot say that it would be safe for the child to be a passenger.

¶ 15 Lastly, we are concerned with the nature of the flights. Father wants to fly the child to her exchanges. The lower court expressed difficulty in understanding why that was a good time to do this and its advisability to do it then as opposed to visitations when father had the child longer. *Id.* at 107. We agree. Airplane use for exchanges would be a rushed situation, due to the strict custody arrangement. A pilot must meticulously examine the aircraft, carefully plan his course, study the weather conditions and prepare for flight. Safety may be compromised if this were done in a hurried manner.

¶ 16 The lower court, despite its reservations, found that with no showing of the inherent danger of small aircraft, it could impose no restrictions. It is the child's safety at issue. We utilize a best interest standard, not an inherent danger standard. An activity does not have to be inherently dangerous to be dangerous in certain circumstances. A child's safety and welfare can be threatened by an innocuous activity just as easily as by an inherently dangerous activity. We find that the lower court abused its discretion by imposing a burden of inherent danger on mother.

¶ 17 Upon review of the record, we find that small aircraft travel with father, especially to exchanges, raises doubts about the child's safety. Since the facts above create serious questions about the safety of the child during these flights, restrictions may be imposed. We, therefore, reverse the order permitting father to transport the child via small aircraft.

¶ 18 Order reversed. Jurisdiction relinquished.