Matthew NAGLE, Appellant,

v.

Margaret Mary Patricia Greene
NAGLE, Appellee.

Superior Court of Pennsylvania.

Argued Feb. 16, 2005.
Filed March 21, 2005.

David S. Rasner, Philadelphia, for appellant.

Linda S. Gardner, Bethlehem, for appellee.

BEFORE: GANTMAN, PANELLA, and OLSZEWSKI, JJ.

OPINION BY OLSZEWSKI, J.:

¶ 1 This is an appeal from an order of court, whereby it was ordered that the two minor children of the involved parties receive and maintain dual citizenship and dual passports. We affirm.

¶ 2 Appellant (father), a citizen of the United States, and appellee (mother), a citizen of Ireland, have been embroiled in custody disputes regarding their two minor children, Devlin and Claire, since April 2002. Devlin, currently age 5, was born to the couple in Bucks County, Pennsylvania, while Claire, currently age 2, was born after the couple had separated and mother had returned to Ireland. Prior to mother returning to her native Ireland, the couple

instituted a stipulation for custody (stipulation), which was made an order of court on May 6, 2002.

¶ 3 The relevant portions of the custody stipulation required that mother be permitted to return to Ireland with Devlin, maintaining temporary shared physical custody of both him and the yet-unborn Claire. Stipulation for Custody, at ¶ 3. It was further ordered that father be allowed an approximate six-week vacation period with Devlin, in the United States, stretching from July 14 to August 28 of each year. *Id.* Due to concerns regarding the mental health and stability of mother, the order also contained a provision that mother receive mental health counseling and provide father with monthly reports of her progress. *Id.* at ¶ 13. Subsequent to the stipulation, the trial court entertained several petitions. These ranged from petitions to modify the custody arrangement to contempt petitions filed by and against both parties for failure to adhere to the provisions of the stipulation.

¶ 4 The order currently appealed to this Court stems from cross-petitions filed by the parties where father requested the reinstatement of his visitation period, and mother requested the court to transfer jurisdiction to Ireland and order father to take the necessary steps to secure dual citizenship and dual passports for the children. Specifically, on appeal we are asked to determine if the trial court abused its discretion in ordering the parties to obtain dual citizenship and passports for their children.

¶ 5 Before we can reach the merits of appellant's argument, we must determine if this appeal is properly before our Court. As a general rule, only an appeal from a final order is proper before this Court. Pa.R.A.P. 341. The rule defines a "final order" as one that "disposes of all claims and of all parties" or one that is "expressly defined as a final order by statute." *Id.* In the realm of custody cases, our Supreme Court has stated that "all orders dealing with custody or visitation, with the exception of enforcement or contempt proceedings, are final when entered." *In the Interest of H.S.W.C.-B & S.E.C.-B*, 575 Pa. 473, 836 A.2d 908 (2003). We have since held a narrow interpretation of *H.S.W.C.-B & S.E.C.-B*, and have declined to extend the holding to cases involving delinquency and commitment determinations and visitation orders under the Juvenile Act, 42 Pa.C.S.A. § 6301, *et seq. See In the Interest of M.D.*, 839 A.2d 1116 (Pa.Super.2003); *In the Interest of J.S.C.*, 851 A.2d 189 (Pa.Super.2004). Because the order in question here did not affect the parties' custody or visitation rights, we find it falls within the "enforcement" exception of *H.S.W.C.-B & S.E.C.-B*, and that it is therefore not a final order.

¶ 6 Appellant's arguments may still be considered, however, if the order in question can be classified as a collateral order. *See* Pa.R.A.P. 313.

The "collateral order doctrine" exists as an exception to the finality rule and permits immediate appeal as of right from an otherwise interlocutory order where an appellant demonstrates that the order appealed from meets the following elements: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if final review is postponed until final judgment in the case, the claimed right will be irreparably lost.

*In the Interest of J.S.C.*, 851 A.2d at 191.

¶ 7 In appellant's response to our September 2, 2004, order directing him to show cause why the appeal should not be dismissed as interlocutory, he argues that

the order in question does in fact meet the requirements of the collateral order doctrine.

¶ 8 With regard to the first prong, we have held that "[t]o be separable and collateral, the nature of the issue to be reviewed must be such that it can be addressed without the need to analyze the central issue of the case." *Hoffman v. Knight,* 823 A.2d 202, 206 (Pa.Super.2003). Appellant argues that this test is met because the issuance of dual passports and citizenship does not require the court to "analyze the central issue of the case," i.e., the modification of the custody order and the change of jurisdiction. Appellant's Response to Rule to Show Cause, at 4. Although we believe the central issue in all custody matters is the best interests of the child, we are constrained to agree with appellant that the trial judge's determination that it would be in the best interests of the children to be citizens of both Ireland and the United States, and to have passports from both jurisdictions, did not require an analysis of the modification or jurisdiction issues. Thus, we agree with appellant that the first prong of the test is satisfied.

¶ 9 As for the second prong, our Supreme Court has explained that "the issue must involve rights deeply rooted in public policy beyond the particular litigation." *Nemirovsky v. Nemirovsky,* 776 A.2d 988, 991 (Pa.Super.2001), *citing Geniviva v. Frisk,* 555 Pa. 589, 725 A.2d 1209, 1214 (1999). In order to satisfy this prong, appellant characterizes the "right" involved as "the right to make legal decisions regarding one's children," "the right to continuing contact," and/or "the right to make decisions regarding the citizenship and origin of passport for one's children." Appellant's Response to Rule to Show Cause, at 5. Using this characterization, appellant argues that his "input in raising

the children and participating in their futures is negated and made meaningless," and thus the right is too important to be denied review. *Id.* Again, although appellant has painted the "right" in question with broad strokes, we are constrained to agree that this burden is met. It is without doubt that the raising of one's children, and the choices made in that regard, involve rights deeply rooted in our public policy. Both our statutory and case law stand for the premise that our purpose in custody issues is to ensure parents maintain continual contact and promote the sharing of parental choices and responsibilities. Although we do not agree that appellant's right to participate in the future of his children was affected, we are of the opinion that the right to decide whether and from where a child should receive a passport or become a citizen is a right that at its core involves the most basic parental responsibility: to ensure the safety of the child and promote the parent-child bond. It is, therefore, too important to be denied review.

¶ 10 Lastly, as to the third prong of the test, appellant must show that, if denied immediate review, his right would be irreparably lost. Appellant argues that once dual citizenship and passports are conferred upon the children, a reviewing court may not have the authority to revoke them or reverse the decision, and thus his right to decide that his children not be dual citizens or have dual passports would be lost. *Id.* at 6. Because we agree that this prong has been met, we find that this order qualifies as a collateral order and we will address appellant's issues.

¶ 11 Appellant raises four issues for our consideration: (1) the authority of a Pennsylvania court to determine citizenship and passport issues in a custody dispute; (2) whether the court properly considered the best interests of the child; (3) whether the

court disregarded the parties' intent from a previous court-ordered agreement, and (4) whether the custody rights of father would be interfered with.

¶ 12 On the first issue, appellant argues that the trial court acted without any authority in ordering the parents to obtain dual citizenship and dual passports for the children. Appellant likens this case to that of *Zummo v. Zummo,* where the court was faced with the challenge of parents with differing religions and the potential constitutional implications inherent in a custody decision, which could force one parent to partake or refrain from partaking in the religious ceremonies of his/her choice. 394 Pa.Super. 30, 574 A.2d 1130 (1990).[1]

¶ 13 Appellee, on the other hand, analogizes the current situation to that of relocation, arguing that Pennsylvania courts have the authority to use, and have used, the best interest of the child standard in determining if a parent with physical custody of a child can relocate to other parts of the country or even other countries. *See Arnold v. Arnold,* 847 A.2d 674 (Pa.Super.2004)(holding a mother could relocate to Canada with her children). Appellee points out that unlike a decision regarding religious upbringing, a court's decision to allow the children to take advantage of dual citizenship will not affect the child's way of life, nor will it impact or favor one parent's constitutional rights over another's. Appellee's Brief, at 15–16.

¶ 14 Although neither situation presents a direct precedent for the case currently before us, we agree with appellee that the issues of obtaining dual citizenship and dual passports for the children are more similar to that of relocation (where a court is permitted to act based on the best interest of the child), than that of religious upbringing (where there must be a showing of substantial harm and courts must fashion the least intrusive means of action). The *Zummo* standard, as advocated by appellant, is therefore not applicable to this case, and the trial court acted within its authority in deciding the matter.

¶ 15 As for appellant's second issue, he argues that even if the court had the authority to decide the matter, it erred in failing to properly apply the best interest of the child standard and by failing to properly support the decision. Appellant argues that the trial court's decision "lacks a foundation and specific reasons," and that the court instead used its decision to settle a "vendetta" against appellant.[2] Appellant's Brief, at 15–16.

¶ 16 Appellant cites multiple decisions for the proposition that a case must be remanded to the trial court when that court failed to properly apply the best interest of the child standard and when the court's opinion did not provide an adequate explanation for its decision. *Id.* at 14–15 (*citing Siliquini v. Kegel–Siliquini,* 786 A.2d 275 (Pa.Super.2001), and *Alfred v. Braxton,* 442 Pa.Super. 381, 659 A.2d 1040 (1995)).

¶ 17 As for the trial court's opinion, we find that the court reasonably concluded

---

1. In *Zummo,* the court set a very high standard regarding the authority of a court to intervene in the religious decisions of parents, requiring that there be a showing of "substantial risk of harm to the child" before court intervention. *Id.*

2. The "vendetta" mentioned by appellant stems from a previous court proceeding where appellant was held in contempt of court for employing "self help" and retaining Devlin in the United States instead of returning him to Ireland following a scheduled visitation period. Although the trial judge does make mention of this in his opinion, we do not find that he improperly relied on it in making his decision.

that differing citizenships and passport origins of the children were legitimate issues of concern, especially due to the nature of the custody agreement which required frequent international travel for visitation. Further, the court provided an adequate explanation for its decision. This case is not akin to those cited by appellant where the lower court opinion provided no explanation; rather, in this case, the trial court clearly stated the reasons for its decision. Trial Court Opinion, at 12–13. We therefore will not remand this case on grounds of an inadequate trial court opinion.

¶ 18 We still must determine if the trial court properly employed the best interest of the child standard where no testimony was taken and the court instead relied upon the arguments of counsel to determine that dual citizenship and passports were in the children's best interests. Both parties agree that Pennsylvania courts have the authority to act "in the best interest of the child" on issues that impact the child's "physical, intellectual, moral, or spiritual well-being"; however, the parties disagree on the application of that standard to this case. Appellant's Brief, at 11; Appellee's Brief, at 14.

¶ 19 Our scope of review in these matters is broad in that "we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings

supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *Siliquini,* 786 A.2d at 277, *citing Garr v. Peters,* 773 A.2d 183, 187 (Pa.Super.2001).

¶ 20 Appellant argues that the trial court failed to apply the best interest of the child standard, instead employing a reverse best interest standard whereby appellant was asked to show why dual citizenship and passports would not be in the best interest of the children.[3] Appellant's Brief, at 18. Although the phrasing of some of the judge's questions appear to support appellant's contention, we do not believe the court erred. Appellee's counsel had just finished providing the court with reasons why dual passports should be obtained and why it would be in the best interest of the children. The judge's question to appellant had the effect of asking appellant to refute the reasons offered by appellee, or, "assuming *arguendo* that appellee's contentions are accurate, what evidence supports your position?". When reviewing the transcript as a whole, it is clear that the court was in fact applying the best interest of the child standard and not some reverse or negative standard.

¶ 21 The trial court considered all of the evidence presented and the arguments made, weighed the potential harmful effects and flight risks argued by appellant's counsel against the potential benefits of ease of travel and future employment and living opportunities argued by appellee's counsel,[4] and reached the decision that

---

3. The judge asked appellant's counsel the following question, "Where is the harm in accomplishing [dual passports] for the children? How does that impact against the children's best interest?" N.T., 6/22/2004, at 11.

4. In her brief to this Court, appellee also argues that the inequity of citizenship and passport origin between the siblings stands to potentially have a detrimental affect on both the sibling, as well as the parent-child, relationship in that it may cause each child to question the love and commitment of the par-

dual citizenship and dual passports were in the best interest of the children.

■ ¶ 22 Appellant's final argument under this issue centers on the fact that the trial court did not hear from witnesses or receive any expert testimony regarding the citizenship or passport issues. We note, as the trial court did, that it was at the suggestion of counsel that the hearing occurred in the way that it did. At the beginning of the hearing, the judge asked both counsel how they wanted to proceed, and appellant's counsel responded that it was his understanding that neither side was "prepared to proceed with witnesses." N.T., 6/22/2004, at 2. Although there were multiple motions before the court, both parties were aware that one of those motions involved the issues currently before this Court and could have come prepared to offer live witness testimony, proposed expert reports, or affidavits. Neither counsel objected during the hearing to the lack of witness testimony, nor did they object when the court reiterated for the record the reasons that testimony would not be taken. *Id.* at 7. Because this issue was not raised in the lower court, appellant is precluded from raising it on appeal.

■ ¶ 23 In his third issue, appellant asks us to determine if the trial judge erred when he "failed to be governed by" the stipulation. Appellant's Brief, at 21. We agree with appellant's recitation of the law regarding the binding nature of the stipulation; however, we disagree with appellant's application of the provisions of the stipulation to the current situation.

Appellant argues that because the stipulation provides that Devlin maintain his United States citizenship and that Claire apply for United States citizenship upon birth, it was clearly the intent of the parties that the children be "only" United States citizens.[5]

¶ 24 We note initially that while the stipulation does provide for the United States citizenship of both children, it does not, on its face, preclude dual citizenship. The use of the word "maintain" presumes that the parties wished to keep up or carry on Devlin's United States citizenship, yet it says nothing of the parties' desire that Devlin have only one citizenship. Although the United States citizenship of the children was clearly an important issue for the parties, we find it telling that appellant did not think it important enough to specify exclusivity of citizenship, especially when he was aware that appellee was an Irish national and that one of the children would be born and both would be living in Ireland. It is simply too great a leap for us to say that because the issue of Irish citizenship was left out of the stipulation, the parties intended that the children be exclusively United States citizens. Further, the record and lower court opinion reveal that the trial court reviewed and considered the provisions of the stipulation, and determined the issues were not governed by the stipulation. Because the stipulation is silent on the issue of Irish citizenship and silent on the issue of passport, the trial court did not err in "failing to be governed" by the stipulation.[6]

---

ent having a different citizenship. Appellee's Brief, at 14. This issue was not raised in the trial court and, therefore, is not considered in our evaluation of the trial court's decision.

**5.** The stipulation provides the following: "[M]other agrees to maintain United States citizenship for Devlin; and, to file application for United States citizenship of their yet un-

born child at the United States Embassy in Dublin within thirty (30) days of the birth of said child." Stipulation for Custody, at ¶ 12.

**6.** We note additionally that even if the issues of Irish citizenship and dual passports had previously been determined by the stipulation, the court may have modified the agreement pursuant to the best interests of the children.

¶ 25 Appellant's final argument is that the granting of dual citizenship and dual passports will interfere with his custody rights. In support of this argument, appellant argues that the issuance of Irish passports will lead to an increased flight risk and that his right to continuing contact with his children would be in danger.

¶ 26 Based on the evidence in the record, we must agree with the trial court that appellant's "flight risk" argument is without merit. Throughout this long custody process, appellee has continually been present for court appearances and abided by the directives of the court.[7] Furthermore, appellant's implication that Irish passports would facilitate appellee's contravention of the trial court's order lacks any foundation or support in the record.

¶ 27 We also agree with the trial court that appellant's parental or custody rights were not affected by the court's decision. The judge's order did not change appellant's legal rights with regard to his children. The order simply required that paperwork be filed to officially recognize the citizenship status of each child. All relevant provisions of the stipulation governing the "home state" and jurisdiction of Bucks County were unaffected by the decision, as was appellant's custody and visitation schedule. Thus, the order was not improper and we affirm.

¶ 28 Order AFFIRMED

Because we have held that the issue was not governed by the stipulation, it is unnecessary for us to fully analyze the modification issue.

7. Appellant argues that this is not true since appellee failed to undergo and apprise him of the mental health evaluation and treatment, and because she has failed to secure Claire's United States citizenship. The issues of ap-pellee's mental health and the adequateness of her treatment are not before this Court. Appellee's counsel explained her client's failure to secure the United States citizenship of Claire as the result of appellant's failure to return to Ireland immediately after Claire's birth.