# IN THE COURT OF APPEALS OF IOWA

No. 20-1165
Filed April 14, 2021

IN RE THE MARRIAGE OF LADY JOANA BUDDEN
AND TOBIAH RICHARD BUDDEN

Upon the Petition of
**LADY JOANA BUDDEN,**
        Petitioner-Appellee,

**And Concerning**
**TOBIAH RICHARD BUDDEN,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Zrinyi Wittig, Judge.

A former husband appeals an order modifying the physical care of his daughter. **AFFIRMED.**

Myia E. Steines of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P., Dubuque, for appellant.

Darin S. Harmon and Jeremy N. Gallagher of Kintzinger, Harmon, Konrardy, P.L.C., Dubuque, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

This case stems from a custody dispute between former spouses Tobiah Budden and Lady Joana Budden. In a modification order, the district court awarded physical care of their six-year-old daughter, C.J.B., to Lady. Tobiah appeals that award, asserting he should be the primary caregiver. Short of that, he seeks a new trial to consider Lady's move with C.J.B. from Louisiana to Arizona. He also challenges the passport and child-support provisions in the decree. Both parties ask for appellate attorney fees.

Recognizing the strong interest in maintaining sibling relationships, we affirm the award of physical care to Lady, who also provides a home for C.J.B.'s two half-sisters. We find no abuse of discretion in the district court's denial of Tobiah's motion for new trial. Further, we uphold the modifications of the passport and child-support provisions. Lastly, we hold that both parties shall pay their own appellate attorney fees.

## I. Facts and Prior Proceedings

Lady is originally from Colombia, and Tobiah is from Greeley, Iowa. They met while vacationing in the Dominican Republic. In 2011, Lady moved to Iowa to marry Tobiah. Lady has permanent residency in the United States until 2024. Tobiah and Lady have one child together, C.J.B., who was born in 2013. Lady also has an older daughter, M.F.M., and a younger daughter, L.S.Q. Lady and Tobiah separated in 2015 and divorced in 2016. The divorce decree awarded the parties joint legal custody and shared physical care of C.J.B.[1]

---

[1] The decree also included a transportation clause. The clause held that the parties agreed to reside within fifty miles of Petersburg, Iowa. Further, the

At the time of the divorce, Lady was working at Dyersville Die Cast making "like $400, $475 a week." In 2015, Lady met Jesus Quinonez, who helped her secure a new job as an electrician's apprentice. From her new job, Lady enjoyed a significant pay increase, though she had to move to the Burlington-Fort Madison area to be closer to work. When she moved, Lady allowed both C.J.B. and M.F.M. to stay with Tobiah to finish the school year.[2] At that time, Lady would see the children almost every other weekend.

Eventually, Lady and Jesus began a romantic relationship and became engaged. They also worked for the same company. In 2017, that company transferred them to Lake Charles, Louisiana, which is a twenty-hour drive from Tobiah's home in Iowa. The next year, Lady and Jesus had a child together, L.S.Q.

When Lady moved to Louisiana, M.F.M. and C.J.B. stayed with Tobiah. Lady made efforts to see her daughters in Iowa but given the distance and her pregnancy with L.S.Q., her visits were limited. Tobiah refused to help defray travel costs beyond agreeing to transport the children the last sixty miles from his home. But Tobiah did continue to make child support payments to Lady while he was caring for M.F.M. and C.J.B.

In July 2018, Lady petitioned to modify physical care of C.J.B. Lady argued that she can better address C.J.B.'s long-term needs and emphasized the close

---

transportation costs would be divided "50/50" as long as they both resided within the fifty-mile limit. The clause also held that if a party moved more than fifty miles away, then that party shall bear 100% of the transportation costs.

[2] The sisters enjoy a close relationship with each other and Tobiah has been a father figure to M.F.M.

bond among the sisters. Lady also asserted that Lake Charles, as a larger community, had more to opportunities for C.J.B.

Tobiah agreed physical care should be modified but argued that he could better minister to C.J.B.'s long-term needs because he offered a more stable and consistent environment. Tobiah also expressed concern that Lady would not inform him about matters related to C.J.B.'s well-being. Further, Tobiah pointed to the quality care he has provided both C.J.B. and M.F.M., allowing them to thrive socially and academically.

Following an early August 2019 modification hearing, the district court awarded physical care to Lady. In support of its decision, the court offered several reasons—foremost the importance of keeping the siblings together. The court believed that Lady was "more flexible to the rigors of co-parenting." The court was troubled by Tobiah's "rigidness" and suggested that his expectations for C.J.B. may be "unattainable." The court found that Tobiah "denied [C.J.B.'s] opportunity for maximum continuing contact with her mother."

The court also found that Tobiah threatened Lady with kidnapping allegations and deportation if she took C.J.B. outside of the United States. Tobiah denied threatening Lady with deportation. Yet the court found Lady to be more credible on this fact.

The court modified the decree of dissolution of marriage as follows: (1) The court awarded Lady physical care of C.J.B.; (2) The court ordered Tobiah to pay $937.00 per month in child support, an increase from the $450 that he had been paying;(3) The court decided Lady would retain possession of C.J.B.'s passport and required her to inform Tobiah of the location and name of the lodging once

she solidified any plans for international travel. This provision replaced a thirty-day notice requirement for international travel; and (4) The court ordered the parties to pay their own attorney fees and one-half of any unpaid court costs;.

After the court issued its modification decision, Tobiah and Lady planned to meet at the airport on August 18 so C.J.B. could return to Louisiana with Lady. The exchange occurred without any issues. Two days later, Lady informed Tobiah that she and the girls were moving to Arizona for her work, and she planned to be there by August 22. Tobiah was aware that Jesus has family in Arizona.

A few days later, Tobiah discovered that Lady had not enrolled C.J.B. in the Lake Charles school for 2019. Suspicious, Tobiah hired a private investigator to help shed light on the situation. The investigation revealed that Lady had purchased land in Arizona, registered M.F.M. for school there, and been working there before the modification trial.

Because Lady had not been forthcoming at the modification hearing about her plans to move, Tobiah asked the court to reconsider its ruling under Iowa Rule of Civil Procedure 1.904 and sought a new trial under Iowa Rule of Civil Procedure 1.1004. The court rejected both motions. The court did revise the transportation provision of the decree and awarded Tobiah more visitation. But otherwise, the court left the modification decision undisturbed.

Tobiah now appeals.

**II. Scope of Review**

We review an order modifying a dissolution decree de novo. *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). Although our review is de novo, we give deference to the district court's findings on witness credibility "because the

district court had an opportunity to view, firsthand, the demeanor of the witnesses when testifying." *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992).

This case is one where the credibility determinations loom large. For instance, the district court found that Tobiah "manipulated" Lady into leaving C.J.B. with him after the divorce. The court determined that he "intimidated" Lady into "believing she would be held criminally accountable if she tried to take the child out of Iowa without his permission." Tobiah denied making such threats. But he acknowledged that he "could understand" why Lady may have thought that he would accuse her of kidnapping because they "were not allowed to leave the state" during their separation. The district court found Lady more believable on this point. We defer to the district court on credibility as we consider Tobiah's claims.

### III. Analysis

### A. Physical Care

The first issue is whether the district court erred in awarding Lady physical care of C.J.B. We consider whether there has been a substantial change of circumstances that necessitates modifying the custody provisions of a dissolution decree. *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The new circumstances "must not have been contemplated by the court when the decree was entered." *Id.* "[A]nd they must be more or less permanent . . . ." *Id.* In addition, they must impact on the child's welfare. *Id.*

As a threshold, the parties agree that given the new distance between their homes, a substantial change of circumstances requires modification of the physical-care provision. Hence, this element is undisputed. Modifying the current shared-care arrangement is the only practical solution.

Next, to determine who should be awarded physical care of C.J.B., we consider which parent can provide better care to the child. *Melchiori*, 644 N.W.2d at 368–69. Generally, the parent seeking to modify custody has a "heavy burden" to show the ability to render superior care. *Id.* But when the petitioning parent has proved a substantial change and the parents have shared care, then both parents bear the same burden as in an initial custody dispute. *In re Marriage of Kreager*, No. 10-0945, 2011 WL 1584293, at *2 (Iowa Ct. App. Apr. 27, 2011). "[T]he question is which parent can render 'better' care." *Id.* (citing *Melchiori*, 644 N.W.2d at 369). "[W]e seek to place children in the environment most likely to advance their mental and physical health and social maturity." *Id.* (citing *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007)).

That "better" care determination includes attention to sibling relationships. Our case law exudes a strong concern for keeping siblings together to preserve those bonds. *See In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986). For a court to depart from this norm, a party must show that separating siblings "may better promote the long-range interests of [the] child." *In re Marriage of Jones*, 309 N.W.2d 457, 461 (Iowa 1981). That principle also applies to half siblings. *Orte*, 389 N.W.2d at 374.

At the heart of this case is the close relationship between C.J.B. and M.F.M. The sisters have a tight bond and enjoy doing nearly everything together. Both

sisters are bilingual, and they like speaking Spanish to each other. If Lady has physical care, C.J.B., she will be able to participate with her sister in extracurricular activities, such as ballet classes. Lady testified that when she moved with M.F.M., the older daughter had a tough time being away from C.J.B. Recognizing the sisters' connection, Tobiah testified that in mediation he offered to keep M.F.M. during his visitation time with C.J.B. But Lady pointed out that as M.F.M. gets older, she will be taking summer vacations with her biological father. So, if Tobiah were granted physical care of C.J.B., the sisters would have limited time together.

While the interest in maintaining sibling relationships is not insurmountable, it remains a guiding principle in custody determinations. This record shows that not only does C.J.B. have a strong bond with her older sister, but she is developing a close relationship with her younger sister, L.S.Q. Tobiah is unable to show that separating C.J.B. from her siblings would be in her best interests.

Beyond the sibling relationships, the district court also considered the willingness of Lady and Tobiah to promote C.J.B.'s relationship with the other parent. *See* Iowa Code section 598.41(5)(b) (2019). The district court found that Tobiah denied C.J.B.'s opportunity for maximum continuing contact with Lady. So Lady was the parent better able to support the other parent's relationship with C.J.B. To that end, Tobiah's concerns that Lady would not support his relationship with C.J.B. are unfounded. In her testimony, Lady expressed her desire that all her children maintain strong ties with their biological fathers.

When considering the parents' ability to cooperate, the district court criticized Tobiah's rigidity, explaining "if terms are not specifically spelled out in the order", then "he is unwilling or unable to conform to a situation, even if it is for

[C.J.B.'s] benefit." We agree with that assessment. Co-parenting, undeniably, is littered with unpredictability and difficult situations. So a willingness to be flexible and adjust is a strong virtue to possess. To her credit, Lady has demonstrated flexibility as a co-parent. For example, she let C.J.B. and M.F.M. finish the school year in Tobiah's care to keep the children together. The record supports the district court's conclusion that Lady will strive to facilitate C.J.B.'s time with Tobiah.

Tobiah further argues that he is better suited to be the physical-care parent based on caretaking patterns and his ability to provide "stability and consistency." It is true that Tobiah has more recent experience caring for C.J.B. and M.F.M. on his own. And he has done so effectively. But as the district court found, Tobiah "forced this circumstance" on Lady by controlling the custody situation through threats and intimidation. Like the district court, we decline to award physical care based on the "false advantage" obtained through Tobiah's manipulative conduct.

That said, we recognize Lady and Tobiah are both worthy parents who truly love and want the best for C.J.B. If there is a tie breaker, it goes to the primacy of the sibling relationships. Tobiah is unable to present evidence to show that separating C.J.B. from her sisters would be in the child's best interests. Thus, we affirm the awarding of C.J.B.'s physical care to Lady.

**B.    New Trial**

As a fallback, Tobiah contends he is entitled to a new trial. *See* Iowa R. Civ. P. 1.1004(7). As newly discovered evidence, Tobiah claimed Lady lied to the

court about her impending move to Arizona. The district court downplayed Lady's misrepresentation and rejected Tobiah's motion for a new trial.

Trial courts have unusually broad discretion in ruling on motions for new trials. *Benson v. Richardson*, 537 N.W.2d 748, 762 (Iowa 1995). We will not disturb the ruling unless the evidence clearly shows the court abused its discretion. *Id.* An abuse occurs when the court exercises its discretion on untenable grounds or acts unreasonably. *Id.*

What is the test? A party seeking a new trial must prove four things: (1) the evidence is newly discovered; (2) the evidence could not have been discovered before trial's end even with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the new evidence will probably change the result if a new trial is granted. *Id.*

On element one, Lady does not seriously dispute that her planned move to Arizona was newly discovered. *See Mulkins v. Bd. of Supervisors of Page Cnty.*, 330 N.W.2d 258, 261 (Iowa 1983) (defining "newly discovered evidence" as proof "which existed at the time of trial but which, for excusable cause, the party was unable to produce at that time").

On element two, she argues that Tobiah knew that "relocation was always a possibility." But Lady's argument overlooks the fact that Tobiah researched and contacted schools in Louisiana to find the best one for C.J.B. He did so because he believed she would be living there. Tobiah was unaware of Lady's intent to move to Arizona with C.J.B. because Lady withheld that information from him. Thus, Tobiah has satisfied the second element.

Turning to elements three and four, the district court held that Tobiah could not show the new evidence was material or would have probably resulted in a different outcome of the modification trial. We agree. Lady's move from Louisiana to Arizona did not bear on the key modification question—which parent could provide the better care for C.J.B. As the district court explained, it was not called to decide whether C.J.B. should live in Arizona, Louisiana, or Iowa. Instead, the court's objective was to determine which parent could better minister to the long-term interests of the child. Knowing about Lady's anticipated move from Louisiana to Arizona would not have likely changed the physical-care determination. Both locations were more than one-thousand miles from Iowa. And in both locations, C.J.B. would still be living with her sisters. We find no abuse of discretion in the denial of the motion for new trial.

At the same time, it is regrettable that Lady misrepresented her intentions about where she was going to live. We do not dismiss the significance of providing misleading testimony.[3] Lady insists her plans were not finalized at the time of the trial in early August. But it is obvious the wheels were in motion and the better approach would have been to notify Tobiah and the court about the prospect that the family would relocate. Going forward, we are hopeful that Lady will be more forthcoming with Tobiah about decisions that impact C.J.B. and live up to the court's confidence that she will be the better physical-care parent.

---

[3] The district court was not convinced that Lady presented "perjured" testimony at trial.

### C.     Passport

The original decree did not state which parent would hold C.J.B.'s passport. But it did require that the parties give each other a thirty-day written notice for international travel. As part of the modification, the court granted possession of C.J.B.'s passport to Lady. The new passport provision dispensed with the thirty-day notice, instead requiring Lady to provide Tobiah with the location and name of the lodging once any plans for international travel were solidified.

Contesting that provision, Tobiah contends that he should hold C.J.B.'s passport. In support of his request, Tobiah points to a situation when Lady traveled to the Dominican Republic with C.J.B. when their original destination was Mexico. Tobiah recalls being unable to contact C.J.B. for nearly a week. Lady contradicts his version, asserting that she called Tobiah the night they landed. Regardless of whose recollection is more accurate, the passport provision is reasonable.

Neither party cites case law addressing the passport issue. But we assume that our result must be in the best interests of the child. *See Nagle v. Nagle*, 871 A.2d 832, 837 n.6 (Pa. Super. 2005) (noting court may modify passport provision in decree to satisfy the best-interest standard); *see also In re D.L.N.*, 609 S.W.3d 237, 247 (Tex. App. 2020) (finding no abuse of discretion in trial court's finding that mother should have right to maintain children's passports). We find it is in C.J.B.'s best interests for Lady, as the physical-care parent, to hold the child's passport. This result is more practical because Lady travels internationally with C.J.B. more frequently than Tobiah does. Expanding C.J.B.'s opportunities for travel with her mother is in the child's best interests.

We also decline to reinstate the stricter notice requirements from the original decree. The new provision provides more flexibility for the child's international travel, while ensuring that Tobiah receives the itinerary in a timely manner.

### D.    Child Support

Iowa courts calculate child support using the uniform guidelines. Iowa Code § 598.21B; Iowa Ct. R. 9.2; *In re Marriage of Heiar*, 954 N.W.2d 464, 473 (Iowa Ct. App. 2020). We review an interpretation of those guidelines for errors at law. *In re Marriage of McCurnin*, 681 N.W.2d 322, 327 (Iowa 2004). In the modification order, the district court calculated Tobiah's support obligation at $937 per month. To reach that calculation, the court identified Tobiah's annual income as $119,351.00 and used Lady's base salary of $56,000.

Tobiah contends the district court overstated his income and understated Lady's earnings. On his side of the ledger, he argues the court inflated his income by considering one-time investment proceeds. On her side, he argues the court ignored overtime pay.

Starting with Lady's paycheck, we recognize that overtime wages are not excluded from a parent's income when calculating child support. *See In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 333 (Iowa Ct. App. 2005). But when "overtime pay appears to be an anomaly or is uncertain or speculative," the court may deviate from the guidelines. *Id*. The district court appropriately deviated here. Lady testified that overtime is not always available to her. The amount of overtime offered depends on the job site and type of work performed. In fact, sometimes

she works less than forty hours a week.[4]  Given the speculative nature of Lady's overtime opportunities, the court acted properly in excluding those amounts when calculating her income for child-support purposes.[5]

The district court also relied on proper methods for calculating Tobiah's income.  True, Tobiah received a one-time investment return of $18,000 in 2017.  But the court also found that "his income has historically been in excess of $110,000 per annum."  So it was not unreasonable for the court to average his earnings from 2017 and 2018 to calculate his income.

We decline to disturb the child-support provision.

### E.      Attorney Fees

Both parties request appellate attorney fees.  An award of appellate attorney fees is not a matter of right but rests within our discretion.  *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997).  In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision.  *Id.*  After considering all relevant factors, we find that the parties should pay their own attorney fees on appeal.  As the unsuccessful litigant, Tobiah shall pay other appellate costs.  *See In re Marriage of Hoffman*, 891 N.W.2d 849, 852 (Iowa Ct. App. 2016).

**AFFIRMED.**

---

[4] The district court mentioned that, going forward, Lady may not be able to accept overtime when offered, because now she'll be caring for "two school aged children" in addition to L.S.Q.  This might be true, but given that Lady was able to accumulate overtime while caring for M.F.M. and L.S.Q., this concern may be overstated.

[5] The district court noted that $67 was the difference between Tobiah's monthly child support payments depending on whether Lady's overtime was included.  The district court found this was "not an injustice."  We agree.