J-A22012-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ELENA SABAKAR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID TYLER STACY | : | No. 305 WDA 2024 |

Appeal from the Order Entered February 23, 2024
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): FD-18-008202-005

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: October 28, 2024**

Elena Sabakar (Mother), *pro se*, appeals from the order denying her petition for special relief, which sought enforcement of her divorce settlement agreement with David Tyler Stacy (Father), in the context of a child custody dispute. We affirm.

The trial court summarized the factual and procedural background:

Father and Mother were married in 2007. They were divorced in Allegheny County, Pennsylvania, in November 2018, but continue to litigate issues arising from [their October 11, 2018, divorce settlement agreement (2018 Agreement)], as well as custody of [their 8-year-old son (Child)]. They currently share physical and legal custody of the Child, although both parents have filed petitions to modify that arrangement….

[On October 12, 2023, Mother filed a petition for special relief, seeking] enforcement of a provision [of the 2018 Agreement] concerning [Child] obtaining dual U.S.-Russian citizenship. Child was born in the United States and, like [Father], is a U.S. citizen. Mother emigrated to the U.S. [in 2002] from Russia, where her extended family remains.

Paragraph 16(H) of the 2018 Agreement states that Father "shall not, in any way, impede, obstruct nor interfere with the process of the minor [C]hild receiving his Russian citizenship." Mother [filed her petition for special relief] due to Father withholding his consent to the change in the Child's citizenship….

A hearing on Mother's petition was held on February 7, 2024. Both parties participated, but only Father had counsel at the time of the hearing, as Mother was and continues to be self-represented. At the hearing, Mother argued that th[e trial c]ourt should allow her to obtain dual citizenship for the Child[,] for reasons including that dual citizenship would provide additional protections for him in emergency situations and allow him access to affordable orthodontic care in Russia. Father responded that dual citizenship would facilitate Mother fleeing with the Child to Russia, something Father testified Mother has threatened to do over the years.

At the time Father and Mother drafted the 2018 Agreement[,] they did so without an attorney. N.T., 2/7/24, at 79. Father testified that at the time …, he did not know that Russia was not a signatory to the Hague Convention on the International Abduction of Children ("the Hague Convention"), and was unaware of the obstacles that fact could present should Mother travel with [Child] to Russia and choose to keep him there.

Trial Court Opinion, 5/14/24, at 2-4 (record citation modified; footnote omitted).[1]

_____

[1] The Hague Convention

seeks "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Art. 1, S. Treaty Doc. No. 99–11, at 7. Article 3 of the Convention provides that the "removal or the retention of a child is to be considered wrongful" when "it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was

*(Footnote Continued Next Page)*

On February 23, 2024, the trial court entered an order denying Mother's petition. Mother timely appealed. Mother and the trial court have complied with Pa.R.A.P. 1925. Mother presents a single question for our review:

> Whether the trial court abused its discretion and/or otherwise committed an error of law by denying Mother's request for enforcement of Paragraph 16(H) of the parties' October 11, 2018 Divorce Agreement pertaining to the minor [C]hild receiving dual citizenship?

Mother's Brief at 4.

Mother argues her petition requested "the enforcement of a straightforward contractual agreement. In the absence of any breach on the part of Mother or any harm to Child, this agreement must be enforced…." *Id.* at 14. Mother takes issue with the trial court's concern regarding Father's lack of legal recourse should Mother take Child to Russia and choose to keep him there. *Id.* at 18. Mother argues the trial court improperly "implie[d] that Mother has the intent to commit a third-degree felony, without any evidence or indication that Mother is capable of or planning to engage in any unlawful activity." *Id.* (citing 18 Pa.C.S.A. § 2909 (concealment of the whereabouts of a child)). Mother asserts Father's testimony demonstrated that he views "the

---

habitually resident immediately before the removal or retention" and "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."

*O.G. v. A.B.*, 234 A.3d 766, 774-75 (Pa. Super. 2020) (quoting *Chafin v. Chafin*, 568 U.S. 165, 168 (2013)).

felony abduction of [C]hild to Russia and the lawful relocation [of Child] to Russia pursuant to [a court-]approved petition for proposed relocation" as "equivalent." *Id.* at 20. Mother contends the trial court adopted the same view and, without citing the trial court's opinion, maintains it "used these terms [(abduction and lawful relocation)] interchangeably, as [is] evident in its [o]pinion." *Id.* Mother asserts the trial court thereby exhibited "bias" and "demonstrate[d] open discrimination against Mother based on her country of origin." *Id.* at 20-21.

"Our standard of review over a custody order is for a gross abuse of discretion." ***Rogowski v. Kirven***, 291 A.3d 50, 60 (Pa. Super. 2023) (citation omitted). An abuse of discretion "will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record." *Id.* (citation omitted).

> In reviewing a custody order, this Court
>
> cannot make independent factual determinations[. Rather,] we must accept the findings of the trial court that are supported by the evidence. We defer to the trial judge regarding credibility and the weight of the evidence. The trial judge's deductions or inferences from its factual findings, however, do not bind this Court. We may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings.

***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citations omitted); ***see also Andrews v. Andrews***, 601 A.2d 352, 353 (Pa. Super. 1991)

(stating that, where a custody matter presents an issue implicating "credibility and weight of the evidence, we defer to the findings of the trial judge, who had the opportunity to observe the proceedings and the demeanor of the witnesses." (citation omitted)).

"The primary concern in any custody case is the best interests of the child." *M.G. v. L.D.*, 155 A.3d 1083, 1091 (Pa. Super. 2017); *see also* 23 Pa.C.S.A. §§ 5328(a), 5338(a). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *D.K.D. v. A.L.C.*, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted).

Regarding a divorce settlement agreement's application to a child custody dispute, we observe the following:

> Parties to a divorce action may bargain between themselves and structure their agreement as best serves their interests. **They have no power, however, to bargain away the rights of their children.** Their right to bargain for themselves is their own business. They cannot in that process set a standard that will leave their children short. Their bargain may be eminently fair, give all that the children might require and be enforceable because it is fair. When it gives less than required or less than can be given to provide for the best interest of the children, it falls under the jurisdiction of the court's wide and necessary powers to provide for that best interest. [The parties' bargain] is at best advisory to the court and swings on the tides of the necessity that the children be provided.

*Kraisinger v. Kraisinger*, 928 A.2d 333, 340-41 (Pa. Super. 2007) (emphasis added; ellipses omitted) (quoting *Knorr v. Knorr*, 588 A.2d 503, 505 (Pa. 1991)).

- 5 -

A contract pertaining to the custody of a minor child is always subject to being set aside in the best interest of the child. To set aside a private agreement regarding the custody of a child, it is not necessary that a court find a change of circumstances. Such an agreement, although entitled to be considered, must always give way where the best interests of the child suggest an alternate custody arrangement. **Mumma v. Mumma**, 550 A.2d 1341, 1343 (Pa. Super. 1988); [**see also**] **Dolan v. Dolan**, 548 A.2d 632 (Pa. Super. 1988) (when structuring a custody order, court may modify a marriage settlement agreement to protect the best interest of the child); **Hattoum v. Hattoum**, 441 A.2d 403, 407 (Pa. Super. 1982) (the child's best interest determines custody, not the parental agreement).

**Belan v. Belan**, 582 A.2d 684, 688 (Pa. Super. 1990) (citations modified).

Here, the trial court determined the 2018 Agreement did not control the underlying child-custody issue:

Section 16(H) of the 2018 Agreement provides that Father "shall not, in any way, impede, obstruct nor interfere with the process of the minor [C]hild obtaining his Russian citizenship." Mother argues that this language precludes Father from trying to prevent her from obtaining dual citizenship for the Child.

However, in the nearly six years since the parties executed the [2018] Agreement, much has changed. First, when Mother and Father drafted the [2018 Agreement], Father, who is not an attorney, did not know that Russia was not a signatory to the Hague Convention. N.T., 2/7/24, at 79. Had Father known that fact and its ramifications, he may not have consented to Section 16(H). Second, between the execution of the 2018 Agreement and the present, Mother has made numerous threats to flee with the Child to Russia, to Father's alarm. **Id.** at 78-82.

Trial Court Opinion, 5/14/24, at 12 (record citations modified; footnote omitted).[2]  The trial court concluded the 2018 Agreement did not preclude Father from opposing Child's dual citizenship.  *Id.*; *see also id.* at 8 (rejecting Mother's argument that the 2018 Agreement "grant[s] her unilateral authority to obtain Russian citizenship for the Child without independent consideration of the Child's best interests.").

In considering whether dual citizenship was in Child's best interests, the trial court considered Mother's position:

> First, Mother testified that orthodontic braces are available to citizens free of charge in Russia[,] but are prohibitively costly in the United States.  N.T., 2/7/24, at 34.  However, Father testified … that he may acquire insurance coverage through his employment in the next year that will cover the cost of the Child's braces.  *Id.* at 36.  Given this possibility, the Child's future orthodontic needs are at this time outweighed by Father's desire to avoid an international custody dispute.

---

[2] Father also argued he could "not have foreseen the current Russian-Ukrainian conflict" at the time he signed the 2018 Agreement.  Father's Pretrial Statement, 1/31/24, at 4 (unpaginated).  Father cited the U.S. State Department's current travel advisory, which states in part:

> Do not travel to Russia due to the unpredictable consequences of the unprovoked full-scale invasion of Ukraine by Russian military forces….  The U.S. government's ability to provide routine or emergency services to U.S. citizens in Russia is severely limited….  Russia may refuse to acknowledge dual nationals' U.S. citizenship, deny their access to U.S. consular assistance, subject them to mobilization [into the armed forces], prevent their departure from Russia, and/or conscript them.

"Travel Advisory: Russia," 2/12/23, https://ru.usembassy.gov/travel-advisory-russia-do-not-travel-february-12-2023/.

Second, Mother argues that Russian citizenship could shield Child from potentially abusive behavior at the hands of Father, or anyone else. *Id.* at 67. At the hearing, Mother accused Father of psychologically and emotionally abusing the Child, and implied that Russian law could provide an additional bulwark against this alleged abusive behavior. *Id.* at 114. Mother's argument is more concerning than persuasive. For one, there was no testimony or evidence that Father has inflicted psychological or emotional abuse on the [C]hild. Nor was there consideration of how empowering Russian authorities to act under such circumstances would impact U.S. jurisdiction. The [trial c]ourt considers Mother's [] argument purely speculative and devoid of any concrete analysis as to how Russian law could further protect the Child. *See id.* at 72, 113.

Mother's third argument is similarly speculative. She asserted that if the Child had dual citizenship, the Russian embassy would afford the Child additional protections in emergency situations, such as a war. *Id.* at 72.

Fourth, Mother framed her dual citizenship argument in terms of the Child's access to Russia[. She testified,] "So for family connections, dual citizenship strengthens [the] familial bond and ensures easy access to extended family members[, as well as] travel ease and consulate support. Two passports facilitate easier travel, including visa-free access[.]" *Id.* at 18-19. Mother echoed this sentiment in her closing statement, concluding that th[e trial c]ourt should allow her to obtain dual citizenship for the Child because "Russian citizenship grants easier access to Russia." *Id.* at 110; *see also id.* at 34-36.

Trial Court Opinion, 5/14/24, at 7-8 (record citations modified).

The trial court also considered Father's position:

Father's overriding objection to the Child's obtaining Russian citizenship is his fear that Mother will abscond with the Child to Russia and refuse to return him to the United States. N.T., 2/7/24, at 81-82. **Father testified credibly to numerous instances over the past few years when Mother has threatened to take or relocate the Child to Russia without his consent.** *Id.* Belatedly aware that Russia is not a signatory to the Hague Convention, Father fears he would be without

- 8 -

recourse were Mother to travel to Russia with [Child] and choose to keep him there.

At the hearing, Mother sought to allay Father's concerns and pointed out that she has not traveled to Russia in over nine years. *Id.* at 59, 64. Father was unconvinced that dual citizenship would, at the present time, do anything but make it more difficult to return the Child to the U.S. once he was in Russia with Mother.

Mother testified to her desire to live primarily in Russia with the Child. *Id.* at 75. In a video exhibit admitted into the record, Mother is heard telling Father that she plans to live with the Child in Russia for most of the year, suggesting that perhaps Father could have custody of the Child during summers. *Id.* at 75; *see also id.*, Exhibits 16, 17. In the video, Mother specifically states, "You [(Father)] can have him [(Child)] for the summer," implying that Mother intended to keep the Child in Russia for the remainder of the year. *Id.* at 75.

Mother expressed familiarity with the statutory process in Pennsylvania's Child Custody Act for seeking judicial authorization to relocate the primary residence of a Child. [*See*] 23 Pa.C.S.A. § 5337. On cross examination of Father, Mother asked [if Father understood that] "kidnapping a child to Russia permanently, as you have made accusations, and relocating the child to Russia through the court and you having him for summer are not the same thing …?" N.T., 2/7/24, at 87.

The distinction between court-authorized relocation of a child and a kidnapping is lost on neither party. Here, Mother has not filed a petition to relocate the [C]hild to Russia, which would be consistent with her stated wishes. Rather, she is pursuing dual citizenship for the Child, **a request which understandably fuels Father's belief that Mother plans to permanently take the Child to Russa, leaving him without recourse to return the Child to the United States**.

Trial Court Opinion, 5/14/24, at 9-10 (record citations modified; emphasis added).

The trial court determined relevant case law supported Father's position:

In **O.G.**, 234 A.3d 766, the Superior Court decided a case with very similar facts and legal issues to the present case. The trial

- 9 -

court in *O.G.* denied a mother's request to take the children to her native Russia over the father's objections, based on Hague Convention concerns and [the] mother's threat to remove [the] children and never return them. *Id.* at 772. The Superior Court affirmed the trial court's findings, reasoning, "[W]e discern no basis upon which to disturb the trial court's direction that neither parent may travel with the [c]hildren outside the continental United States without the written consent of the other parent." *Id.* at 774.

The *O.G.* [C]ourt pointed to the well-established principle of *ne exeat*, which is the authority of a parent "to consent before the other parent may take a child to another country, [and which] confers on the parent a 'right of custody' under the Hague Convention…." *Id.* at 775 (quoting *Abbott v. Abbott*, 560 U.S. 1, 5 (2010)). The [United States] Supreme Court in *Abbott* further explained the principle of *ne exeat*: "Once the court has decreed that one of the parents has visitation rights, that parent's authorization … shall also be required before the child may be taken out of the country[.]" *Abbott*, 560 U.S. at 10 (internal citations omitted).

Here, as with the father in *O.G.*, Father objects to Mother's attempt to obtain Russian citizenship for the Child based on Mother's threats to relocate the Child to Russia, leaving Father with no legal recourse to bring the Child back to the United States. Like the [*O.G.*] Court[, the trial c]ourt finds that Father is well within his *ne exeat* rights to withhold his consent to Mother taking the Child to another country.

Trial Court Opinion, 5/14/24, at 10-11 (citations modified).

The trial court distinguished this Court's holding in *Arnold v. Arnold*,

847 A.2d 674 (Pa. Super. 2004), upon which Mother relied:[3]

---

[3] On appeal, Mother also relies on our decision in *Nagle v. Nagle*, 871 A.2d 832 (Pa. Super. 2005), which she claims "establishes that dual citizenship is in the best interest of a child, as it presents no harm and offers various benefits." Mother's Brief at 16. Mother argues the trial court's opinion "omits any reference to [*Nagle*], effectively disregarding the only relevant precedent *(Footnote Continued Next Page)*

In ***Arnold***, the Superior Court affirmed a trial court decision allowing a mother to relocate with [a] child to Canada. ***Arnold***, 847 A.2d at 676. In reaching its decision, the Superior Court weighed factors including (1) the potential advantages of the proposed move; (2) the integrity of the motives of the parties; and (3) the availability of realistic, substitute visitation agreements. ***Id.*** at 678 (citations omitted).

However, [the instant] case is easily distinguishable from ***Arnold***. First, Canada is much closer geographically to the U.S. than Russia[,] and shares a common language and a comparable legal system. The logistics of an American parent sharing custody with a parent in Canada would thus be substantially easier than an American parent sharing custody with a parent in Russia. Second, **there is good reason to doubt the integrity of Mother's motives here**[,] **given Father's credible testimony regarding her threats to relocate with the Child to Russia against Father's wishes.** Thus, the relevant case law counsels strongly in favor of th[e trial c]ourt denying Mother's petition to obtain dual Russian-U.S. citizenship over Father's objection.

Trial Court Opinion, 5/14/24, at 11-12 (citations modified; emphasis added).

Our review confirms the trial court's factual findings are supported by the record, and its legal conclusions are sound. The trial court properly determined that the 2018 Agreement was not dispositive, and properly applied a best-interest analysis. We discern no abuse of discretion in the trial court's conclusion that obtaining dual citizenship is not in Child's best interest, particularly in light of its finding that Father credibly testified regarding

---

applicable to the matter at hand." ***Id.*** In ***Nagle***, we affirmed the trial court's determination that obtaining dual citizenship was in *that child's* best interests. 871 A.2d at 837-39. However, Mother makes no attempt to compare ***Nagle***'s facts to the instant case, but rather seems to assert that ***Nagle*** established a blanket rule that dual citizenship is in every child's best interest in every case. ***See*** Mother's Brief at 10, 16. It did not. ***See D.K.D.***, 141 A.3d at 572 ("The best-interests standard [is] decided on a case-by-case basis…."").

Mother's repeated threats to take Child to Russia without his consent. Mother's argument rests largely on disputing the credibility of this testimony, and we will not disturb the trial court's credibility determinations. **_See_** **_S.W.D._**, 96 A.3d at 400. Accordingly, Mother's issue merits no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/28/2024