J-S33002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SHANNON C. BOWMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JON S. BOWMAN | : | No. 198 MDA 2024 |

Appeal from the Order Entered January 10, 2024
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2016-00825

BEFORE:  OLSON, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 01, 2024**

Appellant, Shannon C. Bowman ("Mother") appeals from the January 10, 2024 order granting Jon S. Bowman's ("Father") request for their son, I.W.B. (the "Child"), to obtain a United States' passport and denying Mother's petition for contempt of court.  We affirm.

"This matter has a lengthy and tortuous procedural history."  ***S.C.B. v. J.S.B.***, 218 A.3d 905, 908 (Pa. Super. 2019) (prior appeal involving domestic issues raised by identical parties).

> Briefly, we note the parties were married in October [] 2013, but separated shortly after the [Child's birth].  Mother initially filed a complaint for custody on February 11, 2016.  Since that time, the trial court has conducted three custody trials and resolved numerous emergency and contempt petitions filed by both parties.  The most recent custody trial was conducted on November 17 and 30, 2021, and resulted in an amended custody order and parenting plan issued on January 27, 2022, which was amended again on February 11, 2022, after Father filed a motion for reconsideration.  To describe this matter as contentious is an understatement.  Indeed, [a] recent order

includes a schedule for [the] Child's haircuts because the parties cannot, or will not, agree on how [the] Child should style his hair.

*Bowman v. Bowman*, 2022 WL 17258587 at *1 (Pa. Super. 2022) (non-precedential decision) (footnote and internal citations omitted) (prior appeal involving domestic issues raised by identical parties).

The trial court explained the procedural history giving rise to the instant appeal as follows:

> Beginning in May 2023, the parties began filing a barrage of requests with both the assigned Parenting Coordinator, Lori Seratelli, Esquire, and [the trial court]. On May 25, 2023, Father petitioned [the court] for special relief seeking an order for Mother to enroll in therapy at the request of [the] Child's therapist to address "enmeshment issues." That issue was later resolved when Mother did, in fact, enroll in therapy. On May 26, 2023, the Parenting Coordinator issued a report and recommendation regarding [Father's request for the issuance of a passport for the Child and the appointment, at Mother's request, of a new therapist for the Child]. Both parents [challenged the Parenting Coordinator's recommendations by requesting] a *de novo* hearing on the issues. Additionally, on May 30, 2023, Mother filed a petition for contempt against Father asserting three counts: (1) that Father unilaterally took [the] Child out of school early on the day of his wedding so that [the] Child could participate in Father's wedding photos; (2) that Father did not give Mother adequate notice of his 2022 vacation to Kansas; and (3) that Father unilaterally enrolled [the] Child in his health insurance policy. The *de novo* hearing and the hearing on Mother's contempt petition were scheduled for August 16, 2023, and later continued to November 3, 2023 at Father's request.
>
> On September 8, 2023, Father filed a petition for special relief seeking the disclosure of Mother's therapist, which [the trial court] initially denied[,] but was renewed orally by Father and ruled moot when Mother disclosed the therapist's name at the January 8, 2024 hearing. On September 12, 2023, the Parenting Coordinator filed another report and recommendation

regarding [the] Child's haircuts and Father's use of two email addresses. Father requested a *de novo* hearing as to both issues, and the *de novo* hearing was scheduled along with the other *de novo* hearing and hearing for contempt on November 3, 2023.

On September 27, 2023 Mother secured new counsel and filed an additional petition for contempt, alleging two additional counts: (1) that Father did not adequately inform Mother of the address and telephone number where [the] Child would be able to be reached during his "staycation," in July 2023; and (2) that Father unilaterally signed [the] Child up for a golf camp during his custodial period, and permitted his wife, Janna Bowman, to sign the required waiver. Mother's contempt petition was also added to the hearing on November 3, 2023, which was continued to January 8, 2024 at the request of Mother.

The parties appeared before [the trial court] on January 8, 2024 to address the above-listed filings.

\*\*\*

The majority of the hearing . . . focused on whether [the] Child's current therapist, Pamela Moran, was appropriate. [Eventually, however, the hearing moved on to address Father's request for a United States passport for the Child and Mother's petition for contempt of court against Father].

\*\*\*

[Ultimately, the trial court] heard argument from counsel specifically regarding the intent required to hold a party in contempt, after which, [the court] took the matters under advisement. [The trial court] issued an order on January 9, 2024, ordering Mother [to] cooperate in obtaining a passport for [the] Child, and finding that Father did not possess the required wrongful intent to find him in contempt.

Trial Court Opinion, 5/8/24, at 1-6 (unnecessary capitalization omitted). This timely appeal followed.[1]

Mother raises the following issues on appeal:

1. Did the [trial c]ourt commit an error of law and/or abuse its discretion when it summarily dismissed some of the contempt issues and did [not] specifically rule on all of them?

2. Did the [trial c]ourt commit an error of law and/or abuse its discretion [in] deciding not to adjudge Father in contempt when that decision is not supported by evidence [of] record?

3. Did the [trial c]ourt commit an error of law and/or abuse its discretion by ordering Mother to sign a Department of State consent form stating [that her] consent [was] unconditional with regards to passport validity and travel?

4. Did the [trial c]ourt commit an error of law and/or abuse its discretion in granting Father's request to obtain a passport book and passport card for [the] Child over Mother's objection and despite the entirety of record since this case began and without putting into place reasonable child safety measures requested by Mother?

Mother's Brief at 8.

---

[1] The trial court's January 10, 2024 ruling constituted a final order, appealable as of right. **See** Pa.R.A.P. 341(a) (general rule) and (b) (definition of final order). First, it fully disposed of the Mother's claim regarding the Child's therapist, which Mother does not contest on appeal. Second, it completely addressed Father's request to issue a United States' passport and passport card for the Child, as no further hearings or proceedings were scheduled to address the matter. **See G.B. v. M.M.B.**, 670 A.2d 714 (Pa. Super. 1996) (explaining that a custody order is final and appealable after the trial court has concluded its hearings on the matter and the resultant order resolves the pending custody claims between the parties). Third, the trial court adjudicated Father not in contempt of its February 11, 2022 custody order. **See Schultz v. Schultz**, 70 A.3d 826, 828-829 (Pa. Super. 2013) (explaining that an order denying a contempt petition is final and appealable when it denies a party relief to which it claims entitlement pursuant to a prior final order).

- 4 -

We adhere to the following standards:

> We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. We defer to the trial judge regarding credibility and the weight of the evidence. The trial judge's deductions or inferences from its factual findings, however, do not bind this Court. We may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings.

***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citations omitted).

Further,

> This court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

> In order to establish that a party is in civil contempt, there must be proof by a preponderance of the evidence that the contemnor had notice of the specific order that he or she is alleged to have disobeyed, that the act that constituted the contemnor's violation was volitional, and that the contemnor acted with wrongful intent.

***Thompson v. Thompson***, 187 A.3d 259, 263 (Pa. Super. 2018) (citation omitted), *aff'd*, 223 A.3d 1272 (Pa. 2020).

We have reviewed the briefs of the parties, the relevant law, the certified record, and the opinion of the able trial court judge, the Honorable Matthew P. Smith. We conclude that Mother is not entitled to relief in this case for the reasons expressed in Judge Smith's May 8, 2024 opinion. Therefore, we affirm

based on Judge Smith's May 8, 2024 opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach copies of Judge Smith's May 8, 2024 opinion.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/01/2024

Case# 2016-00825-476 Received at Cumberland County Prothonotary on 05/08/2024 10:56 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | |
|---|---|
| SHANNON C. BOWMAN, | : THE COURT OF COMMON PLEAS |
| Plaintiff | : CUMBERLAND COUNTY, PENNSYLVANIA |
| | : |
| v. | : No. 2016-00825 CIVIL TERM |
| | : |
| JON S. BOWMAN, | : |
| Defendant | : CUSTODY |

<u>**OPINION PURSUANT TO PA.R.A.P. 1925(a)**</u>

**Smith, J., May 8, 2024**

<u>**FACTUAL AND PROCEDURAL HISTORY**</u>

This appeal arises from this Court's Order dated January 9, 2024 regarding the issuance of a passport for the above-captioned parties' minor Child, I.W.B. (YOB 2014)("Child"), and Mother's petition for contempt of court against Father.[1] This Court has prepared a number of lengthy opinions in relation to this matter since August 2020, and we specifically refer this Honorable Appellate Court to our previous Opinions dated August 3, 2020, January 27, 2022, and June 17, 2022.[2] For the purposes of this Opinion, we will focus on the factual and procedural history of this matter related specifically to Mother's instant appeal.

On January 27, 2022, this Court issued an amended parenting plan with an accompanying opinion, concerning the parties' legal and physical custody, which was later slightly amended on February 11, 2022 to include the payment schedule for the Child's therapist. Mother appealed this Court's ruling as to the payment of said fees, and the Order was eventually affirmed by this Honorable Appellate Court on November 29, 2022.[3] The parties have been operating under the February 11, 2022 Order (hereinafter "Custody Order") since that date.

Beginning in May 2023, the parties began filing a barrage of requests with both the assigned Parenting Coordinator, Lori Seratelli, Esquire, and this Court. On May 25,

---

[1] The hearing also concerned Mother's request to appoint a new therapist for I.W.B., but she is not appealing this Court's ruling as to that issue.

[2] We believe, however, that this Honorable Appellate Court is familiar with the facts of this case, having entered rulings in Mother's appeals docketed at 636 MDA 2017, <u>S.C.B. v. J.S.B.</u>, 218 A.3d 905 (Pa. Super. 2017), and 447 MDA 2022.

[3] <u>See</u> Non-Precedential Decision, <u>Shannon C. Bowman v. Jon S. Bowman</u>, 447 MDA 2022 (November 29, 2022).

2023, Father Petitioned this Court for Special Relief seeking an order for Mother to enroll in therapy at the request of Child's therapist to address "enmeshment issues." That issue was later resolved when Mother did, in fact, enroll in therapy. On May 26, 2023, the Parenting Coordinator issued a report and recommendation regarding the issuance of a passport for Child at Father's request and Mother's request to appoint a new therapist for Child. Both parents requested a *de novo* hearing on the issues. Additionally, on May 30, 2023, Mother filed a petition for contempt against Father asserting three counts: (1) that Father unilaterally took Child out of school early on the day of his wedding so that Child could participate in Father's wedding photos; (2) that Father did not give Mother adequate notice of his 2022 vacation to Kansas; and (3) that Father unilaterally enrolled Child in his health insurance policy. The *de novo* hearing and the hearing on Mother's contempt petition were scheduled for August 16, 2023, and later continued to November 3, 2023 at Father's request.

On September 8, 2023, Father filed a petition for special relief seeking the disclosure of Mother's therapist, which was initially denied by this Court, but was renewed orally by Father and ruled moot when Mother disclosed the therapist's name at the January 8, 2024 hearing. On September 12, 2023, the Parenting Coordinator filed another report and recommendation regarding Child's haircuts[4] and Father's use of two email addresses. Father requested a de novo hearing as to both issues, and the *de novo* hearing was scheduled along with the other *de novo* hearing and hearing for contempt on November 3, 2023.

On September 27, 2023 Mother secured new counsel and filed an additional petition for contempt, alleging two additional counts: (1) that Father did not adequately inform Mother of the address and telephone number where Child would be able to be reached during his "staycation," in July 2023; and (2) that Father unilaterally signed Child up for a golf camp during his custodial period, and permitted his wife, Janna Bowman, to sign the required waiver. Mother's contempt petition was also added to the hearing on November 3, 2023, which was continued to January 8, 2024 at the request of Mother.

The parties appeared before this Court on January 8, 2024 to address the above-listed filings. This Court first interviewed Child in chambers to ascertain how the current conflicts have been affecting him. Child essentially reported that he wished his parents listened to him more and that he got to make more of his own decisions. The conflict between the parents is palpable for Child, the current example being Child's most recent interview with Gail Souders, Esquire, the guardian *ad litem* (hereinafter "the

---

[4] This Honorable Appellate Court may be familiar with the haircut schedule discussed at length in the January 27, 2022 Opinion and attached to the subsequent parenting plans as Exhibit C.

Case# 2016-00825-476 Received at Cumberland County Prothonotary on 05/08/2024 10:56 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

GAL"). When Mother brought him to the GAL's office, Father unexpectedly arrived at the same time.[5] Child became very upset because he was afraid that there would be an incident between his parents while he was talking to the GAL because they were in her waiting room unsupervised.[6] Child stated that he likes speaking with a therapist to help assuage his fears regarding the conflict.

The majority of the hearing after Child's interview was focused on whether Child's current therapist, Pamela Moran, was appropriate. This Court ultimately ruled that Child should remain in therapy with Ms. Moran as he had established a rapport with her. Mother is not contesting this ruling on appeal.

The hearing next moved to the issue of Father's request to obtain a United States Passport for Child so that he could take Child on a Disney Cruise vacation with his extended family.[7] The parties presented the issue to the Parenting Coordinator, after which the Parenting Coordinator recommended that the parties obtain a passport for Child.[8] Father also requested that Child be issued a U.S. Passport card as well because his wife's family lives close to the Canadian border and they may want to drive to Canada at some point.[9] Father agreed to holding Child's passport in the Prothonotary's Office for safekeeping, providing Mother with 60 days' notice of international travel, and 48 hours' notice of a day trip to Canada with his wife's family.[10]

Mother is vehemently opposed to Child obtaining a U.S. Passport. Mother acknowledged that the Parenting Coordinator's recommendation was a good plan, but in her opinion, "a passport is an open key," because "there is no border patrol monitoring."[11] When asked to name her specific fear with the passport, Mother stated "My fear is that this Court have the jurisdiction to return [Child], and I would have to approach the federal court and probably bankruptcy, hiring an international attorney should Jon choose not to follow the orders on the page. Because that is ultimately the way it would be."[12] When pressed further, Mother alluded to the incident that occurred

---

[5] Transcript of Proceedings, 57, <u>Bowman v. Bowman</u>, No. 2016-00825 (April 16, 2024)(hereinafter "Transcript").

[6] Transcript at 57.

[7] Transcript at 115.

[8] Transcript at 116.

[9] Transcript at 118.

[10] Transcript at 118-119.

[11] Transcript at 131.

Case#: 2016-00825-476 Received at Cumberland County Prothonotary on 05/08/2024 10:56 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

in February 2016 prior to the issuance of any custody order in which Father took the Child without Mother's permission to his father's home in Berks County.[13]

Mother then stated that Father is not forthcoming with his vacation plans, so she could never truly trust his word on where he would be with Child. Mother repeatedly stated that Father "does not follow the words on the page."[14] Mother stated that she believes that it is not the appropriate time to get Child a passport because the custody situation is "too contentious."[15]

This Court then attempted to engage in a conversation with the parents about how trust could be established between the two of them.[16] Mother stated that Father needs to be more forthcoming and give adequate notice of his plans with Child instead of waiting until the bare minimum time required by the Order. Father stated that he would like Mother to give him "straight answers" to his questions instead of not answering him and then immediately seeking the assistance of the Parenting Coordinator or this Court. The conversation degraded, however, into a "tit-for-tat," so the hearing continued.

Mother next testified as to the contempt petitions that she filed. The first involved Father's 2022 vacation. Mother testified that Father told her on May 28, 2022 that he would be going on vacation from July 11 through 18, and that he hoped to get to Kansas to visit his family. Mother then stated that Father did not provide her any further trip details until July 9, 2022, two days before he left, instead of the seven days required by the Order.[17] Mother also noted that Father's plans for accommodations while he was in Kansas changed also, but "that part didn't so much bother me."[18]

Mother then testified as to her next issue for contempt, involving Father's 2023 vacation. She stated that on May 18, 2023, Father told Mother that he would be taking vacation from July 14 through 21.[19] On July 11, 2023, Mother had not heard from

---

[12] Transcript at 132.

[13] Transcript at 133.

[14] Transcript at 132.

[15] Transcript at 134.

[16] Transcript at 138-142.

[17] Transcript at 143.

[18] Transcript at 145.

[19] Transcript at 145.

Case# 2016-00825-476 Received at Cumberland County Prothonotary on 05/08/2024 10:56 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Father about his travel itinerary, so she asked him what his plans were.[20] Father responded that they would be spending the week at home and Child would be at his home every evening.[21] Mother stated that on July 20, 2023, Child called her while she was sleeping, and when she returned the phone call the next morning, Father told her Child was not with him.[22] Mother stated that Child had wanted to speak to her and she would like to speak to him at that moment, to which Father replied that she would be seeing him later that evening, so she could wait to talk to Child.[23] Father did not state where Child was, but Mother stated that she presumed he was with Father's wife.[24]

Mother stated that she did, in fact, call Father's wife, who stated that Child was at golf camp. Mother stated that Father had not informed her of Child's enrollment in the camp, and Father never sought Mother's permission to do so. Mother believed that under the Order's legal custody provisions, Father would have needed to obtain her permission to enroll Child in any sort of camp. Mother then contacted the camp and requested copies of the enrollment forms. Mother testified that Father's wife filled out and signed the liability waiver and Father was listed as Child's only emergency contact. Mother stated that the receipt for payment was dated May 18, 2023, the same day that Father told her of the dates of his vacation. Mother denied ever signing a waiver for Child without Father's permission.[25]

Mother's third count for contempt involved another issue with phone calls. Mother stated that on August 1, 2023, Child called her, and she was unable to answer. When trying to contact him the next day, Father stated that he would have Child return her call and asked for her availability.[26] Mother waited for a call from Child, but instead, Father later texted that Child had not wanted to contact her.[27]

The next issue on contempt concerned the frequency of Child's haircuts. This Court, however, acknowledged that the Order itself contradicts the haircut schedule

---

[20] Transcript at 146.

[21] Transcript at 146.

[22] Transcript at 146.

[23] Transcript at 146.

[24] Transcript at 147.

[25] Transcript at 166.

[26] Transcript at 148.

[27] Transcript at 148.

Case#: 2016-00825-476 Received at Cumberland County Prothonotary on 05/08/2024 10:56 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

attached to Exhibit C on the Order, and so this Court took the blame for the ambiguity and instructed the parties to only follow Exhibit C.

Next Mother raised her issue with Father signing Child up for his health insurance without Mother's consent. The issue boiled down to a previously addressed issue, where Ms. Moran did not accept Mother's insurance for Child, but she did accept Father's. Ms. Moran appeared to bill Child under Father's insurance though he was not actually a beneficiary. The next open enrollment cycle, Father testified that he tried to contact Mother about it, but she did not get back to him, so in order to keep Child's payments with his counselor low, Father added Child to his insurance.[28] Mother acknowledged receiving Father's message, but instead of responding to him, she sent an email to the Parenting Coordinator requesting a court decision on the matter.[29] After discussion with the Court, it was ascertained that Father's insurance is merely secondary insurance, and Mother's insurance remains primary, which would not otherwise impact Mother, though Mother believed that Father would seek an adjustment with support because he was now providing insurance coverage for Child.[30]

The last issue raised on contempt by Mother was Father removing Child from school one hour early to attend a photo session for Father's wedding. Father had been given permission by this Court for Child to participate in all of his wedding activities, except during the time of Child's first reconciliation at Mother's church.[31] Mother stated that Father did not contact her before removing Child from school.[32]

This Court then heard argument from counsel specifically regarding the intent required to hold a party in contempt, after which, this Court took the matters under advisement. This Court issued an Order on January 9, 2024, ordering that Mother cooperate in obtaining a passport for Child, and finding that Father did not possess the required wrongful intent to find him in contempt.

Mother filed a Motion for Reconsideration as to both issues, which was denied by this Court. Mother then filed a timely notice of appeal. Mother's Concise Statement of Errors Complained of on Appeal addresses four points:

---

[28] Transcript at 189.

[29] Transcript at 169.

[30] Transcript at 171-172.

[31] Transcript at 159. See also Order of Court In Re: Father's Motion for Reconsideration, Bowman, No. 2016-00825 (February 11, 2022).

[32] Transcript at 159.

Case# 2016-00825-476 Received at Cumberland County Prothonotary on 05/08/2024 10:56 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1.   Did the lower Court commit an error of law and/or abuse its discretion when it summarily dismissed some of the contempt issues and didn't specifically rule on all of them?

2.   Did the lower Court commit an error of law and/or abuse its discretion deciding not to adjudge Father in contempt when that decision is not supported by evidence in the record?

3.   Did the lower Court commit an error of law and/or abuse its discretion by ordering Mother to sign a Department of State consent form stating "My consent is unconditional with regards to passport validity and travel?"

4.   Did the lower Court commit an error of law and/or abuse its discretion in granting Father's request to obtain a passport book and passport card for Child over Mother's objection and despite the entirety of the record since this case began and without putting into place reasonable child safety measures requested by Mother.[33]

## DISCUSSION

## STANDARD OF REVIEW

The standard of appellate review in custody matters is whether the trial court committed an abuse of discretion. Abuse of discretion is the broadest scope of review and has been described by this Honorable Appellate Court as follows:

> [The appellate court] must accept the findings of the trial court that are supported by competent evidence of record...In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses firsthand...Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. [The appellate court] may reject the conclusions of the trial court only if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court.[34]

In supporting the discretion of a trial court in custody matters, this Honorable Appellate Court has noted

---

[33] Appellant's Rule 1925 Statement, Bowman, No. 2016-00825 (February 8, 2024).

[34] B.S.G. v. D.M.C., 255 A.3d 528, 533 (Pa. Super. 2021)(quoting E.D. v. M.P., 33A.3d 73, 76 (Pa.Super. 2011)(quoting A.D. v. M.A.B., 989 A.2d 32, 35-36 (Pa. Super. 2010)).

Case# 2016-00825-476 Received at Cumberland County Prothonotary on 05/08/2024 10:56 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.[35]

In a custody case, the primary concern is the best interests of the child.[36] "The best interests standard, decided on a case-by-case basis, considers all factors that legitimately affect the child's physical, intellectual, moral, and spiritual well-being."[37] In modifying an award of custody, the trial court must consider all sixteen factors enumerated in 23 Pa.C.S. § 5328(a).[38] However, when a trial court is not making an award of custody, but rather modifying a "discrete custody-related issue," it is not bound to address the sixteen statutory factors in determining the child's best interest.[39] Further, under 23 Pa.C.S. § 5333(d), a trial court may order a party to pay all or part of the costs associated with counseling.

## CONTEMPT

Mother's first two statement of errors concern this Court's failure to hold Father in contempt at Mother's request. In order to find a party in civil contempt, "there must be proof by a preponderance of the evidence that the contemnor had notice of the specific order that he or she is alleged to have disobeyed, that the act that constituted the contemnor's violation was volitional, and that the contemnor acted with wrongful intent."[40] Additionally, to find a party in civil contempt, the trial court must be convinced beyond a reasonable doubt that the contemnor has the present ability to comply with the court order.[41]

---

[35] Id. (quoting Ketterer v. Seifert, 902 A.2d 533, 540 (Pa. Super. 2006)(quoting Jackson v. Beck, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

[36] 23 Pa.C.S. §5328(a).

[37] B.S.G., 255 A.3d at 533.

[38] J.R.M. v. J.E.A., 33 A.3d 647, 652 (Pa. Super. 2011).

[39] M.O., 85 A.3d at 1063.

[40] B.A.W. v. T.L.W., 230 A.3d 402, 406 (Pa. Super. 2020).

[41] Garr v. Peters, 773 A.2d 183, 189 (Pa. Super. 2001)(quoting Sinaiko v. Sinaiko, 664 A.2d 1005,1009 (Pa. Super. 1995)(internal quotations and citations omitted)).

Case # 2016-00825-476 Received at Cumberland County Prothonotary on 05/08/2024 10:56 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

The standard of appellate review in custody contempt matters is whether the trial court abused its discretion. Abuse of discretion has been described by the Superior Court in this context as whether the trial court, "in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of the record..."[42]

The first issue for contempt was Father's failure to notify Mother of his specific travel plans within seven days as required by the Order. The vacation notice of the Custody Order is as follows:

> Notice: The parent shall give notice to the other parent at least 30 days prior to the vacation. "Notice," for the purposes of vacation only, is defined as a communication sent via Our Family Wizard to the other parent regarding the dates of the vacation for planning purposes. The travel itinerary, flight information (if any), and address and phone number of where Child will be staying during the vacation, shall be provided to the other parent as soon as reasonably possible, but in any event, no later than one week prior to the scheduled departure date. As noted in Paragraph 3(n) above, the phone number may be the custodial parent's cellphone number; the address must be a real address, if available, or a latitude and longitude if no real address is available.[43]

For Father's 2022 vacation, though Father informed Mother within 30 days of his intent to take vacation, he did not give her his specific itinerary until 2 days prior to his scheduled departure. Father did not address this claim in his testimony, but even Mother's testimony did not support a finding of contempt. Mother stated that Father informed her on May 28, 2022 that he was planning his vacation from July 11 to July 18 and "hoping" to get to Kansas. Mother then offered into evidence a copy of Father's message from July 9, 2022, which stated

> Below are the details for our vacation. I know these details are a little later than you prefer in coming to you but this trip has been stressful to plan, considering this is my first trip to Kansas since the last attempt at planning a trip. We just finished booking the hotels tonight below are the details...I hope you can understand that as this is the first time that [Child] and Janna will be meeting their Kansas family and my first trip home in 15 years, these plans may be fluid and changes may be made while in Kansas.[44]

---

[42] B.A.W., 203 A.3d at 406.

[43] Amended Custody Order and Parenting Plan, ¶ 4(c)(ii), Bowman, 2016-00825 (February 11, 2022).

[44] Plaintiff's Exhibit 6D.

The exhibit does not show that Father delayed reporting with wrongful intent. Rather, it shows that Father was having difficulty making plans for a trip in which he would be travelling around the state of Kansas visiting his extended family. He did not strictly comply with the Court Order, but Father's words in the exhibit that Mother proffered do not reflect any malicious intent, and a finding of contempt would not have been proper.

For Father's 2023 vacation, Father again did not provide his itinerary, but he was remaining at home, so without travel plans, the seven-day provision does not seem to apply, as it requires disclosure of the "travel itinerary, flight information, address and phone number for Child." While Father should have been more specific with Mother as to his plans for a "staycation," it is unclear whether the Order covers a "staycation." Again, however, even if the Order does cover a "staycation," Mother was not able to show that Father withheld the information with wrongful intent, or whether he simply misunderstood the need to provide details for a "staycation."

As to the golf camp, this Court could not determine whether Father had actually violated a provision of the Order. The camp did not fit into an "extracurricular activity," because it did not interfere with Mother's custodial period, and was not "regularly occurring."[45] It is also not a "school program" for which Mother would have had to be consulted under the legal custody provisions of the Order. As to Mother's argument on the waiver falling under legal custody, this Court found her argument disingenuous, because most amusement parks, trampoline parks, and a variety of indoor and outdoor activities, to include the waterpark mentioned by Child in chambers, require the signing or assumption of a waiver.[46]

Additionally, this Court could not discern wrongful intent. Father, when prodded about his motivations by this Court stated the following:

> I didn't know that it would result in this kind of a problem. Was it easier to do it over vacation time? Yes...I didn't realize that him being excited about something that she may or may not have known about prior to would be this upsetting to her...I knew that there would be a conversation that drug out with the potential of an argument of him not being able to do it...Again, I'm being completely honest with you, Your Honor. I didn't generally think about what the repercussions are going to be from her...I think in the moment of,

---

[45] Amended Custody Order and Parenting Plan ¶ 7(a)-(e), Bowman, 2016-00825 (February 11, 2022).

[46] See Transcript at 164-166; and 208-211.

Case# 2016-00825-476 Received at Cumberland County Prothonotary on 05/08/2024 10:56 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

this is or time as a family, this is our vacation time, this is something that my son wants to do, why prevent him?[47]

It was this Court's impression that while Father did intentionally plan the golf camp over his vacation so that he did not have to get Mother's permission to schedule it, he did it more so out of fear that Child would not be able to participate than out of any wrongful intent. Child wanted to do the golf camp, Father believed that Mother would make it difficult for him to enroll Child, so he took his vacation time over the same week so that it would not interfere with Mother's custodial time, and thus not *technically* violate the Order.

Mother's next count for contempt was that Father did not permit Child to speak with Mother over the phone on August 1, 2023. There was very little testimony as to as to the actual violation Mother claims, and as Mother requested in April 2023 to forego the court-ordered nightly phone calls, there is no longer a provision in the Order for which this violation would fall.[48]

The next issue on contempt was the frequency of Child's haircuts. This Court designated a specific haircut schedule and attached it to the Order as Exhibit C. Regrettably, however, in an effort to minimize "gaming" the schedule, the Court also added the following language to the Order "in no event shall Child receive a haircut earlier than 6 weeks after his last haircut or later than 8 weeks after his last haircut."[49] Unfortunately, the language had the opposite result and created vagueness and confusion. Because the language of the Order allows for alternate interpretations, Father was not properly on notice and cannot be adjudged in contempt of this provision.

Mother's next issue for contempt concerned Father enrolling Child on his health insurance plan without Mother's permission. This contempt harkens back to the October 12, 2021 Order at issue in Mother's last appeal, so this Court will decline to go into great detail on that particular order. The gist is that a status conference with the parties designed to select a therapist for Child devolved into an argument over how Ms. Moran would bill the parents. Mother's insurance did not cover Ms. Moran's services, so for a time, it appeared as though Ms. Moran billed Father's insurance for Child, even though he was not covered by Father's insurance. After the October 12, 2021 status conference, this Court issued an Order that stated a "change in insurance coverage will

---

[47] See Transcript 194-196.

[48] See Order of Court In Re: Summary and Recommendation of the Parenting Coordinator, Bowman, No. 2016-00825 (April 5, 2023). It is noted that this Order anticipated (*read: warned*) that by foregoing the set phone calls, there may be times that Child would choose not to speak to the non-custodial parent.

[49] Amended Custody Order and Parenting Plan ¶ 7(g), Bowman, 2016-00825 (February 11, 2022).

not be unilateral and will either be presented to the Court or negotiated amongst the attorneys as to provide either supplemental, additional, or primary coverage for minor child at the best price with the best coverage."[50]

When Father asked Mother about enrolling Child in his insurance, Mother took the statement from the October 12, 2021 Order literally, and instead of working the issue out with Father, emailed the Parenting Coordinator to ask for her to address it. With Father's open enrollment period ending, Father took it upon himself to enroll Child on his plan as Child's secondary insurance, with Mother's insurance remaining the primary insurance.

Once again, this Court could not ascertain wrongful intent. Mother declined to negotiate with Father regarding the insurance and sought court intervention instead through the Parenting Coordinator as Father's open enrollment period loomed. Father enrolled Child in order to keep the payments to Ms. Moran lower, and Mother is benefiting from the Child being on Father's insurance as a secondary option.[51]

The last issue Mother raised on contempt was Father taking Child out of school on the day of his wedding one hour early so that Child could attend his wedding photo shoot. This Court issued a specific Order to address Father's wedding, which states "Child shall be permitted to attend any other wedding-related family events that do not otherwise coincide with his First Reconciliation."[52] It is this Court's intention that a wedding photo shoot would fall under "wedding-related family events," and therefore, Father was acting within the scope of this Court's Order.[53]

## PASSPORT

Mother's third and fourth errors complained of on appeal concern this Court's ruling that Child should be issued a U.S. Passport and that Mother should cooperate in obtaining said passport by providing Child's original birth certificate and signing the required documents. Mother takes issue with signing the statement of consent because

---

[50] Order of Court Re: Status Conference, Bowman, No. 2016-00825 (October 13, 2021).

[51] We are aware that Mother is suspect of Father's motivations in that she believes he may seek a support adjustment in relation to Child's insurance, but it has been over a year since Father enrolled Child on his insurance plan and he has yet to do so, so Mother's claims ring hollow.

[52] Order of Court In Re: Defendant/Father's Motion for Reconsideration, Bowman, No. 2016-00825 (February 11, 2022).

[53] Frankly, when this Court was informed that Father was getting married on a Friday, we assumed that Child would have been absent from school that whole day.

Case# 2016-00825-476 Received at Cumberland County Prothonotary on 05/08/2024 10:56 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

she does not, in fact, give consent, and believes that this Court has not put in place adequate measures to protect Child while traveling.

The Order issued by this Court regarding Child's passport states the following:

Passport: Child will be allowed to procure a passport and a passport card. Parents will split the fee for a passport book, and Father can pay for expedited processing if he so wishes. Father will bear the cost of the passport card. Father will apply for the passport and Mother will execute any required steps within the next 30 days, including, but not limited to, executing the DS-3053 Statement of Consent Form and providing any required documents, including, but not limited to Child's original birth certificate. Once the passport is issued, it will be delivered to the Prothonotary's Office for safe keeping. Said Passport can be retrieved 60 days prior to any international travel, with both parents consenting to said retrieval. The passport book will be returned to the Prothonotary's office within 14 days of said travel. Father can keep the passport card, unless Mother requests it for her travel. The parents shall not take the Child to any country that does not recognize the Hague Convention, or any country with a level 3 or 4 travel advisory.[54]

There is very little appellate case law on the issuance of passports for children in relation to custody matters, and most of the cases that have been reported concern parents who are dual citizens or otherwise have ties to other countries.[55] As to appellate review, however, the Superior Court has held

Our scope of review is broad in that 'we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.[56]

---

[54] Order of Court In Re: Reports and Recommendations of the Parenting Coordinator dated May 26, 2023, September 12, 2023, and November 29, 2023; Father's Petition for Special Relief; Father's Motion for Discovery; and Mother's Petition for Contempt, ¶ 1, Bowman, No. 2016-00825 (January 9, 2024).

[55] See e.g. O.G. v. A.B., 234 A.3d 766 (Pa. Super. 2020)(Mother and children held dual Russian/U.S. citizenship); and Nagle v. Nagle, 871 A.2d 832 (Pa. Super. 2005)(Mother held Irish citizenship and children were dual Irish and U.S. citizens).

[56] Nagle, 871 A.2d at 837.

Mother's arguments are not supported by the record. First, in terms of the protections for Child's travel, this Court carefully considered Mother's concerns and crafted a practical solution. Mother's fear in Father traveling internationally with Child is that Father will leave the country with Child and never return. That fear perceived by Mother is based on the incident that occurred in 2016 early in the parties' separation where Father removed Child from the marital home and took him to his Father's house in Berks County without Mother's permission. There was no custody order in place at the time, but Father's actions were nonetheless punished. He was not permitted to exercise any form of custody of Child for two months, and was then relegated to supervised visits for another three months. The current Custody Order is the first Order granting Father shared physical custody of Child, and was filed almost exactly 6 years after the commencement of this action. It has now been over 8 years since Father absconded with Child.

Additionally, this Court did not find it reasonably believable that Father would abscond to another country with Child. Father owns a home in Dauphin County with his wife, both of whom work locally. Father is close with his wife's family who also lives within the Commonwealth. Father's extended family, to this Court's knowledge, resides in the United States. Father is a United States citizen and during the hearing Mother did not suggest that he has ever been a citizen of another county or has ties to another country.[57] Father's purpose in obtaining the passport was to take Child on a Disney Cruise with his extended family.

All things considered, however, this Court did believe Mother's fear to be her actual perception, and thus, put in place the restrictions as outlined above. Father cannot take Child anywhere that does not recognize the Hague Convention, or to any country with a level 3 or 4 travel advisory. Additionally, this Court mandated that the Prothonotary hold Child's passport book, and provided that no one be able to remove it without consent of the other party. This Court believes these precautions to be reasonable and balanced with the benefit of Child traveling abroad and spending vacation time with his family.

As to Mother's statement of error that this Court cannot properly force her to sign the Statement of Consent Form, at the time, this Court believed, based on all of our previous interactions with Mother, that Mother would have preferred to be an active participant in the application process, and so the Order reflects that belief.

---

[57] Mother appeared to suggest in her Motion for Reconsideration that Father has a friend in Berks County who has ties to Ukraine, and that when he fled with Child in February 2016, he actually went to that friend's house and not to his father's house. We heard no testimony regarding this "friend" at trial or whether Father is still friends with him. Additionally, we find it very difficult to believe that Father would abscond with Child to an active warzone.

Case# 2016-00825-476 Received at Cumberland County Prothonotary on 05/08/2024 10:56 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

BY THE COURT:

Matthew P. Smith, J.

Brandon S. O'Donnell, Esq.
1 Irvine Row
Carlisle, PA 17013

Tabetha A. Tanner, Esq.
2145 Market Street
Camp Hill, PA 17011